UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| DENG PETER MAKUEY,<br><br>　　　　　　Petitioner,<br><br>　v.<br><br>BRUCE SCOTT et al.,<br><br>　　　　　　Respondent. | CASE NO. 2:25-cv-02135-DGE-BAT<br><br>ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS (DKT. NO. 1) |

Before the Court is Petitioner Deng Peter Makuey's petition for writ of habeas corpus. (Dkt. No. 1.) Having reviewed the petition, the return memorandum (Dkt. No. 9), the response (Dkt. No. 12), all supporting materials, and the presentations made by the Parties at oral argument on December 10, 2025, the Court GRANTS Petitioner's writ of habeas corpus.

I.　BACKGROUND

A.  Factual Background

Petitioner is currently detained by United States Immigration and Customs Enforcement ("ICE") at the Northwest ICE Processing Center ("NWIPC") in Tacoma, Washington.  (*Id.* at 2.)

- 1

Petitioner was born in a refugee camp in Ethiopia to Sudanese parents. (*Id.* at 4; Dkt. No. 14 at 2.) Petitioner alleges he is "stateless" because he does not have citizenship in Ethiopia, Sudan, or South Sudan.[1] (Dkt. Nos. 1 at 4; 14 at 2.) Petitioner was admitted to the United States as a refugee on September 26, 2001. (Dkt. No. 11 at 2.) On April 19, 2012, Petitioner was convicted of possession of marijuana with intent to deliver within 1,000 feet of a school. (*Id.*) Based on Petitioner's conviction, Department of Homeland Security ("DHS") issued Petitioner a Notice to Appear ("NTA") on April 25, 2012, which stated he was removable under §§ 237(a)(2)(A)(III) and 237(a)(2)(B)(i) of the Immigration and Nationality Act ("INA"). (*Id.*) DHS detained Petitioner the same date the NTA was issued. (*Id.*)

On May 8, 2012, an immigration judge ordered Petitioner removable to Ethiopia or South Sudan in the alternative. (*Id.*) Petitioner did not appeal this decision. (Dkt. No. 10-3 at 2.) In 2012, after Ethiopia declared it would not issue a travel document for Petitioner because it believed he was a citizen of Sudan, Petitioner was released under an Order of Supervision. (Dkt. No. 10-4 at 58.) Between 2012 and 2019, Petitioner was convicted of various offenses, including theft in the second degree, theft in the third degree, possession of a controlled substance without a prescription, four counts of custodial assault, and robbery in the second degree. (Dkt. Nos. 10-7 at 34; 10-8 at 2.) Petitioner alleges ICE was timely and fully informed of his criminal convictions and periods of criminal incarceration as of May 1, 2024. (Dkt. No. 10-1 at 6.)

ICE reissued Petitioner's Order of Supervision on March 20, 2014, and again on May 1, 2024. (*Id.* at 5; Dkt. Nos. 10-5 at 2; 10-6 at 2–3.) In September 2024, Petitioner received an

---

[1] South Sudan seceded from Sudan and became an independent country in 2011. (Dkt. No. 14 at 2.)

ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS (DKT. NO. 1) - 2

employment authorization document and obtained a job at a nonprofit "assisting unhoused individuals in Portland find stable housing." (Dkt. No. 1 at 7.) Petitioner states he had "fully reestablished himself as a law-abiding member of his community in Vancouver, Washington, where he rents an apartment for himself," his girlfriend, and her daughter. (*Id.*) Petitioner remained employed, volunteered at a local church, and is expecting a child in December 2025. (*Id.*)

On July 14, 2025, during a scheduled appointment, ICE revoked Petitioner's Order of Supervision and arrested him. (Dkt. Nos. 1 at 6; 11 at 3.) On the same day, Officer Timothy Walsh served Petitioner with a Notice of Revocation of Release, which stated:

> This letter is to inform you that your case has been reviewed and it has been determined that you will be kept in the custody of U.S. Immigration and Customs Enforcement (ICE) at this time. This decision has been made based on a review of your file and/or your personal interview on account of changed circumstances in your case.
>
> ICE has determined that you can be expeditiously removed from the United States pursuant to the outstanding order of removal against you. On May 8, 2012, you were ordered removed to Ethiopia with alternative to South Sudan by an authorized U.S. DOJ official and you are subject to an administratively final order of removal. Your case is under current review by Ethiopia and/or South Sudan for the issuance of a travel document.
>
> You are advised that ICE had determined that you have violated conditions of your release that were listed in the Order of Supervision you were issued at the time of your release from ICE custody, e.g., you have violated the conditions of your release as follows: You have been arrested and/or convicted numerous times since your release from custody.
> . . . .
> Based on the above, and pursuant to 8 C.F.R. § 241.4/ 8 C.F.R. § 241.13, you are to remain in ICE custody at this time. You will promptly be afforded an informal interview at which you will be given an opportunity to respond to the reasons for the revocation. You may submit any evidence or information you wish to be reviewed in support of your release. If you are not released after the informal interview, you will receive notification of a new review, which will occur within approximately three months of the date of this notice.

(Dkt. No. 10-8 at 2–4.)

Petitioner claims that at the time ICE revoked his Order of Supervision, "the agency had not secured travel documents necessary for removal from the United States, nor have they secured travel documents during the 90+ days that he has been detained." (Dkt. No. 1 at 5.) Officer Brett Booth, a supervisory detention and deportation officer at NWIPC, declared that a travel document request was completed for South Sudan and submitted to headquarters for approval on October 24, 2025, and that ICE sent a travel document request to the consulate of South Sudan on November 13, 2025. (Dkt. No. 11 at 3.) Based on those facts, Officer Booth believed "there is a substantial likelihood that a travel document will be obtained and [Petitioner] will be removed in the reasonably foreseeable future." (*Id.*)

### B. Procedural Background

Petitioner asks for a writ of habeas corpus, challenging his detention at NWIPC based on alleged violations of the Administrative Procedure Act ("APA"), the Due Process Clause of the Fifth Amendment, and the INA and its implementing regulations. (Dkt. No. 1 at 2.) On October 29, 2025, Petitioner filed his petition and a motion for a temporary restraining order. (Dkt. Nos. 1, 2.) The Parties then requested—and the Court granted—to forgo the motion for a temporary restraining order in favor of expedited briefing on the petition. (Dkt. Nos. 6, 7.) Respondents filed a response on November 14, 2025. (Dkt. No. 9.) Petitioner filed a reply on November 28, 2025. (Dkt. No. 12.) The Court held oral argument on December 10, 2025.

## II. JURISDICTION

Petitioner invokes this Court's jurisdiction under the habeas provision, 28 U.S.C. § 2241. "[D]istrict courts retain jurisdiction under 28 U.S.C. § 2241 to consider habeas challenges to immigration detention that are sufficiently independent of the merits of [a] removal order."

*Lopez-Marroquin v. Barr*, 955 F.3d 759, 759 (9th Cir. 2020) (citing *Singh v. Holder*, 638 F.3d 1196, 1211–1212 (9th Cir. 2011)).

### III.   LEGAL STANDARD

A writ of habeas corpus is "available to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. CONST., Art. I, § 9, cl. 2). To succeed on his habeas petition, Petitioner "must show [he] is in custody in violation of the Constitution or laws or treaties of the United States." *Doe v. Bostock*, No. C24-0326-JLR-SKV, 2024 WL 3291033, at *5 (W.D. Wash. Mar. 29, 2024), *report and recommendation adopted*, No. C24-0326JLR-SKV, 2024 WL 2861675 (W.D. Wash. June 6, 2024) (citing 28 U.S.C. § 2241). Because habeas proceedings are civil in nature, the "[p]etitioner 'bears the burden of proving that he is being held contrary to law, . . . [and] he must satisfy his burden of proof by a preponderance of the evidence.'" *Aditya W. H. v. Trump*, No. 25-cv-1976, 2025 WL 1420131, at *7 (D. Minn. May 14, 2025) (quoting *Freeman v. Pullen*, 658 F. Supp. 3d 53, 58 (D. Conn. 2023) (citations omitted)).

The detention, release, and revocation of supervised release of a noncitizen is governed by 8 C.F.R. §§ 241.4 and 241.13. § 241.4 applies to noncitizens who have been ordered removed in general, while § 241.13 specifically applies to noncitizens whom the government has determined "there is no significant likelihood . . . [that they] can be removed in the reasonably foreseeable future." 8 C.F.R. § 241.4(b)(4); 8 C.F.R. § 241.13(b)(1) ("Section 241.4 shall continue to govern detention of aliens under a final order of removal . . . unless the Service makes a determination under this section that there is no likelihood of removal in the reasonably foreseeable future.").

The government's discretion to revoke the release of a noncitizen whose removal was previously found to be unlikely in the reasonably foreseeable future is limited. Specifically, a noncitizen "*who violates* any of the conditions of release *may* be returned to custody." 8 C.F.R. § 214.13(i)(1) (emphasis added). Thus, under § 241.13(i)(1), absent a violation of an Order of Supervision, a noncitizen may not be returned to custody. Similarly, the government "*may* revoke an alien's release . . . *if*, on account of changed circumstances, the Service determines that there is a significant likelihood that the alien may be removed in the reasonably foreseeable future. 8 C.F.R. § 214.13(i)(2) (emphasis added). Thus, under § 241.13(i)(2), absent the government determining, on account of changed circumstances, that a noncitizen may be removed in the reasonably foreseeable future, a noncitizen may not be returned to custody.

Parallel to these limitations on the government's ability to revoke the release of a noncitizen whose removal is unlikely in the reasonably foreseeable future, the Supreme Court has held that the INA does not authorize "indefinite, perhaps permanent, detention" of noncitizens subject to final orders of removal. *Zadvydas v. Davis*, 533 U.S. 678, 699 (2001). As the *Zadvydas* court recognized, "[a] statute permitting indefinite detention of [a noncitizen] would raise a serious constitutional problem [under] . . . [t]he Fifth Amendment's Due Process Clause." *Id.* at 690. "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Due Process] Clause protects." *Id.* The *Zadvydas* court concluded, "once removal is no longer reasonably foreseeable, continued detention is no longer authorized by statute." *Id.* at 699. The "presumptively reasonable" period for detention following a removal order is six months. *Id.* at 701.

       The presumptively reasonable period of detention does not reset each time a noncitizen is detained; rather, the aggregate time in detention post removal order is considered. *Nguyen v. Scott*, 796 F. Supp. 3d 703, 721722 (W.D. Wash. 2025) (rejecting argument that detention period resets every time a noncitizen is detained); *Giorges v. Kaiser*, No. 25-cv-7683, 2025 WL 2898967, at *8 n.5 (N.D. Cal Oct. 10, 2025) ("When calculating time spent in detention, courts aggregate nonconsecutive detention periods. The clock does not restart each time that a nonconsecutive detention begins for a noncitizen."); *Sied v. Nelson*, No. 17-cv-06785-LB, 2018 WL 1876907, at *6 (N.D. Cal. Apr. 19, 2018) (collecting cases).

### IV. ANALYSIS

       Petitioner challenges his detention as unlawful based on the following grounds: (1) violation of Fifth Amendment substantive due process, (2) violation of Fifth Amendment procedural due process, (3) violation of the APA as contrary to law and constitutional right, (4) violation of the APA as arbitrary and capricious, (5) violation of the APA in excess of statutory authority, (6) ultra vires action, and (7) violation of the *Accardi* doctrine because Respondents failed to follow agency procedures. (Dkt. No. 1 at 14–21.)

    **A. Fifth Amendment Due Process**

       The Due Process Clause of the Fifth Amendment protects against deprivation of liberty without proper process, and this protection extends to deportation proceedings. U.S. CONST. amend. V. ("No person shall be . . . deprived of life, liberty, or property, without due process of law[.]"); *Trump v. J.G.G.*, 604 U.S. 670, 673 (2025) ("'It is well established that the Fifth Amendment entitles aliens to due process of law' in the context of removal proceedings." (quoting *Reno v. Flores*, 507 U.S. 292, 306 (1993)).

The traditional test for evaluating due process claims set forth in *Mathews v. Eldridge*, 424 U.S. 319 (1976), "can and must account for the heightened governmental interest in the immigration detention context." *Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1206 (9th Cir. 2022). "The fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.'" *Mathews*, 424 U.S. at 333 (quoting *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965)). Determining whether a governmental action violates "the specific dictates of due process generally requires consideration of three distinct factors:"

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Mathews,* 424 U.S. at 335.

1. Private interest

The first *Mathews* factor considers "the private interest that will be affected by the official action." *Id.* Petitioner says this factor weighs in his favor because his private interest—his release from initial detention—was affected when he was redetained in 2025. (Dkt. No. 12 at 7.) Freedom from detention "is the most elemental" of private interests affected by official action. *Hamdi*, 542 U.S. at 529; *Zadvydas*, 533 U.S. at 690 ("Freedom from imprisonment— from government custody, detention, or other forms of physical restraint— lies at the heart of the liberty that [the Due Process] Clause protects."). So it is unsurprising "[t]he Supreme Court has repeatedly recognized that individuals who have been released from custody, even where such release is conditional, have a liberty interest in their continued liberty." *Doe v. Becerra*, 787 F. Supp. 3d 1083, 1093 (E.D. Cal. 2025) (collecting cases). Consequently, when Petitioner was released from ICE custody on an Order of Supervision in 2012, he "took with him a liberty

interest which is entitled to the full protections of the [D]ue [P]rocess [C]lause." *Ramirez Tesara v. Wamsley*, No. 2:25-CV-01723-MJP-TLF, 2025 WL 2637663, at *3 (W.D. Wash. Sept. 12, 2025).

Petitioner's liberty interest was reaffirmed each time a new Order of Supervision was issued. And the fact that Respondents allowed Petitioner to remain in the community for over a year after reissuing an Order of Supervision on May 1, 2024, and more than 13 years in total after his release in 2012, only strengthens this interest. *See Dejesus v. Bostock*, No. 25-CV-01427-JHC-TLF, 2025 WL 3268002, at *3 (W.D. Wash. Nov. 24, 2025). Petitioner, who had taken steps to turn his life around upon release from his last incarceration, has now been undeniably deprived of this interest because he was arrested, transferred to the NWIPC, and remains detained today. Accordingly, the first *Mathews* factor favors Petitioner.

        2.    <u>Risk of erroneous deprivation of interest through procedures used</u>

The second *Mathews* factor examines "the risk of an erroneous deprivation of [the petitioner's private] interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards[.]" 424 U.S. at 335. The risk of an erroneous deprivation is not only high in this instance, it appears to have materialized.

Respondents rely on § 241.13(i) as the basis for Petitioner's revocation of release. (*See* Dkt. No. 9 at 12.) Respondents contend ICE properly revoked Petitioner's release based on ICE's "determination that Petitioner could be removed expeditiously, *and* based on Petitioner's many violations of the conditions of his release." (*Id*. at 13.)

As to the first contention, the July 14, 2025 Notice of Revocation of Release stated, "ICE has determined that you can be expeditiously removed" and that Petitioner's case was "under current review by Ethiopia and/or South Sudan for the issuance of a travel document." (Dkt. No.

10-8 at 2.) But the record shows this contention was demonstrably false on July 14, 2025; a point counsel for Respondent conceded at oral argument. ICE knew as early as May 30, 2012 that Ethiopia would not issue Petitioner a travel document. (Dkt. No. 11 at 3.) And the first time ICE took any steps to initiate the process to potentially obtain a travel document from South Sudan was on October 24, 2025, over 90 days *after* ICE "revoked" Petitioner's release. (*Id.*) Moreover, it was not until November 13, 2025 that ICE submitted a travel document request to the government of South Sudan. (*Id.*) Furthermore, as of today's date, absent from the record is any indication when, if ever, a travel document to South Sudan will be issued. Undeniably, on July 14, 2025, Respondents were not authorized to revoke Petitioner's release under 8 C.F.R. § 241.13(i)(2) because there had been no changed circumstances allowing Respondents to determine there was a significant likelihood Petitioner would be removed in the reasonably foreseeable future.

As to Respondent's second contention, there is no evidence Petitioner violated the terms of his May 1, 2024 Order of Supervision. Instead, the July 14, 2025 Notice of Revocation identified Petitioner's criminal history—all of which occurred prior to May 1, 2024—as the basis for concluding Petitioner violated his conditions of release. (Dkt. No. 10-8 at 2.) The Notice stated that Petitioner violated the conditions of his release listed "in the Order of Supervision you were issued at the time of your release from ICE custody." (*Id.*) At oral argument, Respondents argued the last time Petitioner was "released" from ICE custody was in 2012 and, therefore, revocation under 8 C.F.R. § 241.13(i)(1) was proper because Petitioner had violated his conditions of release after he "had been released under an order of supervision." As the argument goes, ICE did not "release" Petitioner on May 1, 2024, which means the May 1, 2024

Order of Supervision should not be considered in evaluating whether Respondents complied with 8 C.F.R. § 241.13(i)(1).

Respondents' argument is untenable.  The May 1, 2024 Order of Supervision states, "it is ordered that you be placed on supervision and permitted to be at large," i.e. released.  (Dkt. No. 10-6 at 2.)  It then warns that "[a]ny violation of these conditions [of release] may result in you being taken into . . . custody." (*Id*. at 3.)  Petitioner physically appeared before an ICE official in Oregon in May 2024 and was allowed to leave.  (Dkt. 14 at 5.)  He then was required to reappear before an ICE official on August 1, 2024 in Oregon, did in fact reappear, and again allowed to leave.  (Dkt. Nos. 10-6 at 2; 14 at 5.)  Respondents do not explain why Petitioner was issued an Order of Supervision on May 1, 2024, what purpose it serves in relation to the 2012 Order of Supervision, or even under what authority the May 1, 2024 Order was issued if not 8 C.F.R. § 241.13.  Respondents provide no basis to conclude they may rely on the 2012 Order of Supervision and disregard the 2024 Order of Supervision to claim Petitioner violated his conditions of release.  The Court rejects this interpretation and concludes the 2024 Order of Supervision is the operative Order of Supervision under 8 C.F.R. § 241.13.  Having failed to establish that Petitioner violated the terms of the May 1, 2024 Order of Supervision, Respondents were not authorized to revoke Petitioner's release under 8 C.F.R. § 241.13(i)(1).

Accordingly, the Court finds and concludes that detaining Petitioner on July 14, 2025 and continuing to detain him at this time without properly applying 8 C.F.R. §§ 241.13(i)(1) and (2) has created a significant risk of an erroneous deprivation of Petitioner's liberty interest.  The second *Mathews* factor favors Petitioner.

### 3. Government's interest

The third *Mathews* factor contemplates "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." 424 U.S. at 335.

Respondents have an interest in ensuring a noncitizen with a final order of removal appears when necessary to facilitate their removal and in ensuring the noncitizen is not a danger to the community. *Zadvydas*, 533 U.S. at 690 (government has an interest in "ensuring the appearance of [noncitizens] at future immigration proceedings" and "preventing danger to the community"). But those interests are contemplated and met by the specific requirements outlined in § 241.13, which Respondents did not follow in revoking Petitioner's release. Accordingly, the Court finds that the government's interest in re-detaining a noncitizen, who has not violated the terms of their release nor whose removal is likely to occur in the reasonably foreseeable future, without a pre-detention hearing or some other pre-detention process is low. *See Wamsley*, 2025 WL 2402130, at *5 ("the Government's interest in re-detaining non-citizens previously released without a hearing is low") (citing *Ortega*, 415 F. Supp. 3d at 970). And although requiring a pre-detention process in this case would present some administrative burden, given the high risk of erroneous deprivation and the fundamental liberty interest at stake, providing effectively no pre-detention process—as ICE did here—is constitutionally deficient.

Nonetheless, Respondents argue sufficient process is provided as § 241.13(i)(3) allows a noncitizen the opportunity to respond to a revocation decision by participating in an informal interview to present evidence challenging the basis for revocation, which Petitioner in this case refused to participate in and instead asked for an attorney. (Dkt. Nos. 9 at 13; 10-8 at 5.) But the post-deprivation process contained in § 241.13(i)(3) does not guard against the improper

deprivation of liberty in instances where the government lacks authority to revoke release in the first place. *See E.A. T.-B.*, 2025 WL 2402130, at *6 ("Although the Government notes that Petitioner may request a bond hearing while detained, such a post-deprivation hearing cannot serve as an adequate procedural safeguard because it is after the fact and cannot prevent an erroneous deprivation of liberty.").

In sum, all three *Mathews* factors favor Petitioner. Respondents' detention of Petitioner with apparently no process at all violates the due process protections afforded to him by the Constitution. As a result, Petitioner has proven by a preponderance of the evidence that he is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c).[2]

---

[2] Because the Court finds that Petitioner's detention violates the Due Process Clause, and thus affords relief on that basis, it does not reach Petitioner's other causes of action. The Court, however, will note that Petitioner has been detained over six months between his time in detention in 2012 and his current detention. Pursuant to *Zadvydas*, Petitioner would have an avenue to pursue alternative relief.

ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS (DKT. NO. 1) - 13

## V. CONCLUSION

The Court GRANTS the petition for habeas corpus. (Dkt. No. 1.) The Court ORDERS Respondents to release Petitioner from custody, and further, ORDERS that Petitioner may not be redetained until after he is provided written notice of the basis for revoking his release along with an appropriate opportunity to respond to notice. Within **TWENTY-FOUR (24)** hours of this order, Respondents must provide the Court with a declaration confirming that Petitioner has been released from custody.

Dated this 16th day of December, 2025.

David G. Estudillo
United States District Judge